UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SAMANTHA MARIE SPAICH,

                Plaintiff,

    -vs-                    **No. 1:15-cv-00274-MAT**
                               **DECISION AND ORDER**
NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

---

**I. Introduction**

Represented by counsel, Samantha Marie Spaich ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying Plaintiff's application for Supplemental Security Income ("SSI"). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

**II. Procedural History**

On January 13, 2011, Plaintiff, then-eighteen years old, applied for SSI, alleging disability beginning November 30, 2008

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

due to epilepsy and organic mental disorder (chronic brain syndrome) (T. 49). Plaintiff's application was denied on May 27, 2011 (T. 49-50), and she timely requested a hearing before an administrative law judge ("ALJ"). ALJ Mark Solomon held a hearing via video teleconference on March 15, 2013 (T. 33-48, *see* T. 111-12). On April 3, 2013, the ALJ issued a decision in which he found Plaintiff was not disabled as defined in the Act (T. 14-32). Plaintiff timely filed a request for review of the ALJ's decision with the Appeals Council and, on February 4, 2015, the Appeals Council denied review, leaving the ALJ's decision as the final agency decision (T. 1-4). This action followed. The Court assumes the parties' familiarity with the facts of this case as set forth in the record and will not repeat them except as necessary.

**III. The ALJ's Decision**

At step one of the five-step sequential evaluation, *see* 20 C.F.R. § 416.971, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 13, 2011, the application date (T. 19). At step two, the ALJ found that Plaintiff had the severe impairment of a history of seizure disorder (20 C.F.R. § 416.920(c)) (*Id.*). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (T. 23). Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels but with the following

2

nonexertional limitations: (1) the claimant must avoid working at unprotected heights and with hazardous machinery; (2) the claimant cannot drive, and cannot climb ropes, ladders or scaffolds; (3) the claimant is able to perform the basic mental demands of simple work; and (4) the claimant can carry out and remember simple directions, respond appropriately to supervision, coworkers, and usual work situations, and deal with changes in a routine work setting (T. 23-25). At step four, the ALJ found that Plaintiff had no past relevant work (T. 25). At step five, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (T. 26). Accordingly, the ALJ found that Plaintiff had not been under a disability since January 13, 2011, the date the application was filed, through the ALJ's decision (T. 27).

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a Plaintiff is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). "The deferential standard of review for substantial evidence does not apply to the

3

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

Plaintiff makes the following arguments in support of her motion for judgment on the pleadings: (1) remand is necessary because the ALJ failed to consider Listing 12.05(C) despite Plaintiff's valid, full scale IQ of 69; and (2) remand is necessary because the ALJ failed to weigh and consider a teacher questionnaire.

**A. Listing 12.05(C)**

Plaintiff argues that she made a *prima facie* showing that her impairments met or equaled Listing 12.05(C) and therefore the ALJ erred by offering no listing analysis in the face of that showing. Moreover, Plaintiff contends that nothing else in the ALJ's decision or the medical record permits an inference by this Court as to the ALJ's rationale with respect to 12.05(C). The Commissioner argues that the ALJ did consider the listed impairment and correctly determined that Plaintiff's impairment did not meet the requirements of the listings. Moreover, the Commissioner contends that the record evidence shows Plaintiff did not meet the requirements of 12.05(C).

In order to be found disabled based on intellectual disability under Section 12.05 of the Listing of Impairments, a claimant "must prove: (1) that he satisfies the definition provided for in the

4

introductory paragraph of Section 12.05; and (2) that he satisfies the criteria listed in subsection A, B, C, or D." *Antonetti v. Barnhart*, 399 F. Supp.2d 199, 200 (W.D.N.Y. 2005) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00 Mental Disorders, at 12.00A). The introductory paragraph of Section 12.05 states that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. A claimant who meets the introductory paragraph's criteria then must satisfy the parameters set forth in 12.05(C), by demonstrating (1) a "valid verbal performance, or full scale IQ of 60 through 70; and (2) a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. An individual who is found to meet these requirements is presumed to be disabled at step three of the sequential process without further inquiry. *See* 20 C.F.R. § 404.1520(a)(4)(iii). Thus, in order to meet 12.05(C)'s requirements, Plaintiff is required to show (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning; (2) a valid verbal performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff argues that she has made a *prima facie* showing of all three requirements. Initially the Court notes that Plaintiff is correct that the ALJ found the third requirement met by finding Plaintiff had the severe impairment of a history of seizure disorder. Thus, only the first and second requirements of 12.05(C) remain at issue.

With respect to the first requirement, Plaintiff contends that she has demonstrated deficits in adaptive functioning. "Adaptive functioning refers to an individual's ability to cope with the challenges of ordinary everyday life." *Talavera v. Astrue*, 697 F.3d 145, 153 (2d Cir. 2012) (quoting *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007)) (internal quotation marks omitted).

Plaintiff argues that her deficits in adaptive functioning track the examples in *Talavera*, namely, living on one's own, paying bills, and avoiding eviction. *Talavera*, 697 F.3d at 153. Specifically, Plaintiff notes that she does not drive or manage money; does not have a driver's license; takes special education classes; did not grocery shop by herself; and relied heavily on her mother who she still lived with, including having her mother complete her social security forms, remind her to take her medication and prepare complex meals (T. 38-39, 43, 149, 165, 181, 183, 198, 472, 478). As the ALJ noted in his decision, Plaintiff received a special education diploma (T. 24). However, Defendant is correct that Plaintiff participated in *general* education classes with special education *support*, was not exempted from state

6

testing, and passed state-wide Regents examinations in Writing, Biology and Global History (T. 198, 200-01). Moreover, Plaintiff's lack of a driver's license was not due to her cognitive functioning, but to her seizure disorder, which arose around the time Plaintiff would have been eligible for a driver's license (T. 169). With respect to living with her mother, Plaintiff stated that she stayed with her boyfriend a couple days per week and had not moved out of her mother's house because her mother did not want her to "move out yet" (T. 40). Moreover, many of the *Talavera* examples did not apply to Plaintiff at the time of the ALJ's decision, including caring for one's children or avoiding eviction.

Several courts have concluded that a claimant's effectiveness in areas of social skills, communication, and daily living skills, also illustrate adaptive functioning. *See, e.g.*, *Webb v. Colvin*, No. 12-CV-753S, 2013 WL 5347563, at *4 (W.D.N.Y. Sept. 23, 2013); *Betram v. Colvin*, No. 6:11-CV-1505, 2013 WL 2403668, at *2 (N.D.N.Y. May 31, 2013). Indeed, *the court in Talavera* cited examples of social skills, communication, and daily living skills, in concluding that substantial evidence supported the ALJ's finding that Talavera had "not met her burden of establishing that she suffers from qualifying deficits in adaptive functioning." *Talavera*, 697 F.3d at 153-54 (citing as evidence of adaptive functioning the plaintiff's ability to navigate public transportation without assistance; engage in productive social relationships; manage her own personal finances; use computers; the

7

display of "fluent" speech; "coherent and goal-directed" thought processes and "appropriate" affect). Defendant correctly contends that the ALJ's decision and the medical record are replete with examples of Plaintiff's adaptive functioning. Specifically, the ALJ found, considering the medical record, that Plaintiff had only mild limitations in her ability to perform the activities of daily living, social functioning and concentration persistence and pace (T. 22); *see Rodriguez v. Colvin*, No. 13-CV-6360, 2014 WL 3882191, at *14 (W.D.N.Y. Aug. 6, 2014) (finding that an adaptive functioning determination was implicit in ALJ's finding that claimant's intellectual impairment imposed only minimal functional limitations). Plaintiff independently cared for her personal needs, including hygiene, and prepared simple meals for herself. (T. 25, 166-67). During the relevant period, Plaintiff sought out and undertook volunteer opportunities with a breast cancer non-profit organization and graduated from high school (T. 20, 25, *see* T. 539-41). Moreover, Plaintiff took care of pets, cleaned her room, and performed chores such as washing laundry and dishes (T. 166-68). She also watched television, listened to the radio, read, sent text messages, and regularly spoke with her friends on the telephone or computer (T. 170, 175). Plaintiff frequently socialized with friends at her home or their homes, watching movies, playing games, going camping, going fishing, or going to the beach (T. 170, 478, 983). Plaintiff does not dispute that the

8

ALJ correctly addressed Plaintiff's activities of daily living and social functioning in his decision.

As the ALJ thoroughly discussed, the medical opinion evidence also showed that Plaintiff's cognitive problems were not significant enough to interfere with her ability to function on a daily basis (T. 19-23). For instance, during a May 5, 2011 consultative examination, Dr. Sandra Jensen considered Plaintiff's cognitive testing and opined that Plaintiff's borderline intellectual functioning was not significant enough to interfere with her daily functioning (T. 483; *see* T. 21). Dr. Jensen also found that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks with supervision, make appropriate decisions, relate adequately with others and deal with stress (T. 21, 478, 480-84); *see also Talavera*, 697 F.3d at 153-54 (noting that such findings were inconsistent with deficits in adaptive functioning). Dr. H. Tzetzo, a consultative psychiatrist, explicitly considered Plaintiff's "adaptive functioning," and similarly assessed that Plaintiff's mental conditions were not significant enough to interfere with her daily functioning (T. 21-22, 485-98). Specifically, Dr. Tzetzo opined that Plaintiff had only mild limitations in performing the activities of daily living, maintaining social functioning and sustaining concentration, persistence and pace (T. 495). Thus, substantial evidence in the

9

medical record supports a finding that Plaintiff did not have deficits in adaptive functioning.

Plaintiff also argues that she has met the second requirement of 12.05(C) by showing subaverage general intellectual functioning and a full scale IQ score of 60-70 because Dr. Jensen found Plaintiff to have a valid full scale IQ of 69 (T. 481-82). Plaintiff adds that her IQ was between 67 and 68 with 95% accuracy, citing 2006 and 2009 IQ tests in the record. Plaintiff's references to the 67 and 68 scores misstates the record. Her 2006 standard, full-scale score on the Wechsler Intelligence Scale for Children ("WISC-IV") was *72*, with a *range* of 68-78 at a 95% confidence level (T. 204.). Plaintiff's 2009 standard, full-scale score was also 72, with a range of 68-77 at a 95% confidence level (T. 207.). Because this second exam was conducted on May 20, 2009, it was still valid at the time of Plaintiff's May 5, 2011 consultative examination whereby Dr. Jensen administered the Wide Range Achievement Test, Fourth Edition, to Plaintiff. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (providing that "IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above").

Moreover, Dr. Jensen noted, with respect to Plaintiff's full scale score of 69 on the Wide Range Achievement Test, Fourth Edition, that Plaintiff "did not necessarily put forth her best effort in the testing." (T. 482). By contrast, both of Plaintiff's 2006 and 2009 tests were conducted by Silver Creek Central School

Psychologist Jinelle N. Burger who had multiple sessions with Plaintiff over at least three years (T. 203, 207). Dr. Jensen also observed that it was "very likely that [Plaintiff's] true cognitive ability is in the borderline range, even though she scored a 69" (T. 482). Plaintiff's other standard scores with Dr. Jensen of 80 in Verbal Comprehension, 75 in Perceptual Reasoning, 66 in Working Memory, and 71 in Processing Speed support that conclusion (*Id.*). Dr. Tzetzo also considered Plaintiff's 2009 and 2011 scores (T. 497) in assessing the severity of Plaintiff's mental impairments, and concluded that not only did her mental impairments *not* meet the Listing requirements, they were *not severe* (T. 485-97). Thus, substantial evidence in the record supports the conclusion that Plaintiff's IQ was higher than the 2011 standard score of 69.

In any case, and irrespective of the validity of Plaintiff's IQ scores, Plaintiff's demonstrated adaptive functioning showed that she did not meet the Listing's requirements, and the ALJ did not err in failing to specifically discuss Listing 12.05(C), because the evidence does not indicate that plaintiff qualified under that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (claimant must meet all the requirements of listed impairment); *Jones v. Astrue*, No. 07-CV-4886 (SLT), 2010 WL 1049283, at *7 (E.D.N.Y. Mar. 17, 2010), *aff'd* 432 F. App'x 23 (2d Cir. 2011) (ALJ's decision need not include "express rationale" in finding that claimant does not meet listing where ALJ's decision and evidence supported ALJ's conclusion). Therefore, Plaintiff has

11

failed to demonstrate that the ALJ improperly neglected to consider Listing 12.05(C), and accordingly remand is not warranted.

### B. Other Opinion Evidence

Plaintiff further argues that remand is necessary because the ALJ failed to weigh and consider special education teacher Carly Swenson-Liebenow's teacher questionnaire ("Teacher Questionnaire"). According to Plaintiff, a reasonable fact finder could determine that Ms. Swenson-Liebenow's opinion directed a finding of disability or otherwise did not support the ALJ's RFC finding because she noted problems with acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself and others. Defendant counters that the ALJ's RFC finding was supported by substantial evidence in the record.

SSR 06-03p explains that opinions from "other sources" such as teachers are "important" and "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3. SSR 06-03p further directs ALJs to apply the same factors used to evaluate acceptable medical sources in evaluating the opinions of non-medical sources such as teachers. *See Vishner v. Colvin*, No. 1:14-CV-00431 (MAT), 2017 WL 1433337, at *5 (W.D.N.Y. Apr. 24, 2017) (citing *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011)).

12

However, even if an ALJ must consider relevant, other evidence, *see* 20 C.F.R. § 404.1545(a)(3), the ALJ is not required to discuss every individual piece of information submitted as evidence. *See, e.g.*, *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 78-79 (N.D.N.Y. 2005) ("The ALJ was not required to mention or discuss every single piece of evidence in the record." (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983))). Rather, where "the evidence of record permits [the court] to glean the rationale of an ALJ's decision, [the ALJ is not required to explain] why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur*, 722 F.2d at 1040.

Here, the ALJ did not err by not specifically addressing the June 7, 2011 Teacher Questionnaire completed by Ms. Swensen-Liebenow and the ALJ's decision was supported by substantial evidence. The Teacher Questionnaire asks Ms. Swensen-Liebenow to address the five domains of functioning: acquiring and using information, attending and completing tasks, interacting and relating with others, moving and manipulating objects and caring for herself. However, the form is very simplistic – it merely requires that the teacher circle ratings and provide a conclusory statement or two unsupported by any relevant evidence or reasoning. *See Crouch ex rel. K.C. v. Astrue*,

13

No. CIV.A. 5:11-820, 2012 WL 6948676, at *8 (N.D.N.Y. Dec. 31, 2012) ("Finally, although ALJ Gale did not expressly mention this fact, the record discloses that the teachers' opinions generally were simple, circled ratings on a form questionnaire with only a few single-sentence, conclusory statements that were neither explained nor documented by relevant, supporting evidence."), *report and recommendation adopted*, 2013 WL 316547 (N.D.N.Y. Jan. 28, 2013).

Moreover, Ms. Swenson-Liebenow's Teacher Questionnaire does not support a finding that Plaintiff has significant deficiencies in the five domains of functioning, much less a finding of disability on its own, as Plaintiff claims. Instead, Ms. Swenson-Liebenow repeatedly observes that Plaintiff's classroom struggles are *not* the result of Plaintiff's abilities, but the result of Plaintiff not applying herself to her studies because she "may not want to be in school" (T. 219).

With respect to each of the five domains of functioning, the Teacher Questionnaire directs Ms. Swenson-Liebenow to rate the severity of Plaintiff's problems with respect to approximately ten to twelve different activities listed on the form to illustrate each domain. In order to rate the severity, the Teacher Questionnaire includes a scale of one to five, with one being "no problem," two being a "slight problem," three being an "obvious problem," four being a "serious problem" and five being a "very

serious problem."

Of the fifty-three activities across the five domains of functioning, Ms. Swenson-Liebenow listed Plaintiff as having *no problem* or only a *slight problem* in twenty-two activities, including no problem for any activity in the domain of moving about and manipulating objects (*Id.*). Perhaps more importantly, Ms. Swenson-Liebenow did not find that Plaintiff had *any* very serious problems and *only* six serious problems in activities (T. 214-219).

Of the six activities rated a serious problem, Ms. Swenson-Liebenow rated many similar or related activities no problem or only a slight problem suggesting that she was not entirely certain about her ratings. For example, in the domain of attending and completing tasks, Ms. Swenson-Liebenow found Plaintiff had a serious problem "focusing long enough to finish [an] assigned activity or task." However, she also found that Plaintiff had no problem at all with "paying attention when spoken to directly" and only a slight problem "*carrying out* multi-step instructions" (T. 215). Moreover, in the domain of acquiring and using information, Ms. Swenson-Liebenow found that Plaintiff had only a slight problem with "comprehending oral instructions," "learning new material," "recalling and applying previously learned material" and "understanding and participating in class discussions" (T. 214). In other activities marked "serious

15

problems," Ms. Swenson-Liebenow seemed even less certain of her rating. For example, in the attending and completing tasks domain, Ms. Swenson-Liebenow revised up an initial, lower rating to a serious problem by scratching the lower rating out with an "X" and circling the higher rating (T. 215).

Indeed, Ms. Swenson-Liebenow's comments also exhibit a belief that Plaintiff was sufficiently capable to handle her schoolwork, but she simply did not apply herself. For example, Ms. Swenson-Liebenow stated that Plaintiff "does not like to do extra work or sometimes even the work assigned to her" (T. 214). Perhaps most importantly, Ms. Swenson-Liebenow found that Plaintiff "*can* understand what is required of her *to a great degree when she would like to*." (T. 214 (emphasis added)). It is notable to point out that Ms. Swenson-Liebenow expressed skepticism with respect to Plaintiff's medical problem of seizures, explaining that the "severity of [her seizures] . . . is questionable" (T. 219). Therefore, despite noting that Plaintiff had a few serious problems, this is hardly a circumstance where a teacher's opinion may "properly be determined to outweigh the opinion from a medical source, including a treating source." SSR 06-03p, 2006 WL 2329939, at *6.

Additionally, to the extent that the Teacher Questionnaire finds that Plaintiff struggles are deficient in certain areas of functioning, Ms. Swenson-Liebenow's opinion is largely consistent

16

with the ALJ's RFC finding which is supported by the reports of the consultative examiners in the medical record. For example, the Teacher Questionnaire found Plaintiff could follow single-step instructions, pay attention when spoken to directly, and, with only a slight problem, comprehend oral instructions, carry out multi-step instructions, and know when to ask for help (T. 214-18.). The ALJ's RFC finding included a limitation for simple work noting Plaintiff could carry out and remember simple directions, and respond appropriately to supervision and coworkers. (T. 23-25). Dr. Jensen's opinion, which the ALJ accorded significant weight, considered Plaintiff's mental status examination findings, medical history, complaints, reported activities and intellectual testing and determined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks with supervision, make appropriate decisions, relate adequately with others and deal with stress (T. 476-84).

Accordingly, the Court finds that substantial evidence in the record supports the ALJ's decision, and the ALJ did not commit legal error in failing to summarize the Teacher Questionnaire as a part of his decision. *See Mongeur*, 722 F.2d at 1040. Therefore, remand is not warranted on this basis either.

## VI. Conclusion

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated: December 5, 2017
Rochester, New York.